Colin M. Stephens
STEPHENS BROOKE, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
colin@stephensbrooke.com

Roy Falik
KING & SPALDING LLP
1401 Lawrence St.
Suite 1900
Denver, CO 80202
Phone: (858) 344-7745
rfalik@kslaw.com

David Harper Weiss
MAYER BROWN LLP
700 Louisianna St.
Suite 3400
Houston, TX 77002-2798
dweiss@mayerbrown.com
    *Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>-vs-<br><br>Stacy Weischedel,<br><br>               Defendant. | Case No.: 9:98-cr-00021-M-DWM-2<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)** |

i

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................1

    A.   The Government focuses on the crime and the sentencing, which took place 30 years ago. ...........................................................1

    B.   The Government does not contest that Stacy has demonstrated extraordinary and compelling circumstances. ......................................4

    C.   The Government's analysis of the 18 U.S.C. § 3553(a) factors is incorrect. ...................................................................................................5

        i.    The nature and circumstances of the offense. ...........................5

        ii.   The history and characteristics of the defendant. .....................5

        iii.  The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. .................................................8

        iv.   The need to afford adequate deterrence to criminal conduct and protect the public from further crimes ...................9

        v.    Impact of the agreement ............................................................9

        vi.   Amendment to USSG § 5H1.1 warrants a reduction ................10

III. CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Concepcion v. United States*,
    597 U.S. 481 (2022)......................................................................................1

*Johnson v. Texas*,
    113 S. Ct. 2658 (1993)..................................................................................6

*Roper v. Simmons*,
    125 S. Ct. 1183 (2005)..................................................................................6

*United States. v. Birkett*,
    2023 WL 4274683 (E.D. New York 2023).................................................3

*United States v. Castellano*,
    2024 WL 4504523 (D. Mont. 2024)......................................................... 7-8

*United States v. Cheng*,
    678 F. Supp. 3d 312 (E.D. New York 2023)...............................................3

*United States v. Cruz*,
    2021 WL 1326851 (D. Connecticut 2021).............................................2, 8

*United States v. Espino*,
    2022 WL 4465096 (D. Kansas 2022)..........................................................3

*United States v. Greene,*
    516 F. Supp. 3d 1 (D.D.C. 2021).............................................................. 1, 2

*United States v. Halvon*,
    26 F.4th 566 (2d Cir. 2022) .......................................................................10

*United States v. Lara*,
    658 F. Supp 3d 22 (D. Rhode Island 2023)................................................3

*United States v LeBaron*,
    2023 WL 7308116 (S.D. Texas 2023)............................................2, 5-7,11-12

*United States v. Morris*,
    2022 WL 3703201 (S.D.N.Y. 2022).............................................................3

*United States. v. Ramsay,*
    538 F.Supp.3d 407 S.D.N.Y. 2021)........................................................................2

*United States v. Taylor*,
    2023 WL 4407593, (D. Maryland 2023).............................................................3

**Statutes**

18 U.S.C. § 4042(a)(2)....................................................................................................9

18 U.S.C. § 4042(a)(3)....................................................................................................9

## I.  INTRODUCTION

While this reply focuses on the Government's arguments in opposition to Stacy's motion for compassionate release, at the outset, Stacy would emphasize what the Government *did not contest* from Stacy's motion. It did not contest that BOP officials sexually abused Stacy and tortured her, conceding that she has established extraordinary and compelling circumstances. It did not contest that Stacy has a strong record of rehabilitation during nearly three decades in prison and that she is not a threat to society. Nor, did it contest that Stacy has a strong and viable release plan.

## II.  ARGUMENT

### A.  The Government focuses on the crime and the sentencing, which took place 30 years ago.

The first third of the Government's response to Stacy's opening brief focuses on her crime and sentencing. But those are just two of several factors that must be considered. It is accepted that compassionate release must consider the person Stacy is today and cannot be based solely on the gravity of the crime committed. *United States v. Greene*, 516 F.Supp.3d 1, 27 (D.D.C. 2021) ("[Congress never intended for] court[s] to deny…motion[s] for compassionate release simply and solely because the defendant's offense of conviction [was] an egregious and dangerous crime."); *see also Concepcion v. United States*, 597 U.S. 481, 498 (2022) ("district

1

courts deciding First Step Act motions regularly have considered evidence of post-sentencing rehabilitation and unrelated Guidelines amendments").

There is no shying away from Stacy's terrible crime. She fully accepts responsibility for her actions. But, there have been numerous cases across the country in which federal judges have granted compassionate release to perpetrators of equally—if not more—heinous crimes. Specifically, in at least ten decisions issued in the last four years, federal courts have granted compassionate release motions that reduced life sentences for murders. This list is only a representative sample of many such cases.

| Case Cite | Crime Convicted | Change in Sentence |
|---|---|---|
| *United States v. Greene*, 516 F.Supp.3d 1 (D.D.C. 2021) | Felony murder, armed robbery, rescue of a federal prisoner, and premeditated murder of a federal officer. *Id*. at *4. | Reduced a life sentence to time served (49 years). *Id*. at *28. |
| *United States v LeBaron*, 2023 WL 7308116 (S.D. Texas 2023) | Murder of three men and a child. *Id*. at *3. | Reduced a life sentence to 30 years. *Id*. at *9. |
| *United States v. Ramsay,* 538 F.Supp.3d 407 S.D.N.Y. 2021) | Murder in aid of racketeering (Defendant killed two bystanders in a crowd—one of whom was pregnant—while attempting to murder a gang rival). *Id*. at *412. | Reduced a life sentence to 30 years. *Id*. at * 429 |
| *United States v. Cruz*, 2021 WL 1326851 (D. Connecticut 2021) | Murder of two men. *Id*. at*2. | Reduced a life sentence to 27 years. *Id*. at*7. |

| Case Cite | Crime Convicted | Change in Sentence |
|---|---|---|
| *United States v. Lara*, 658 F.Supp3d 22 (D. Rhode Island 2023) | A carjacking that resulted in a murder. *Id*. at *25-46. | Reduced a life sentence to 28 years. *Id*. at*41, 44. |
| *United States v. Cheng*, 678 F.Supp.3d 312 (E.D. New York 2023) | Defendant drove fellow gang members to and from three planned murders; committed two armed robberies and raped one of the robbery victims. *Id*. at *314. | Reduced a life sentence to 31 years. *Id*. at *314, 316. |
| *United States v. Espino*, 2022 WL 4465096 (D. Kansas 2022) | Conspiracy to distribute more than 500 grams of methamphetamine that resulted in a murder. *Id*. at *1. | Reduced a life sentence to 30 years. *Id*. at *1, 5. |
| *United States v. Birkett*, 2023 WL 4274683 (E.D. New York 2023) | Defendant participated in two murders. *Id*. at *1-2. | Reduced a life sentence to 40 years. *Id*. at *7. |
| *United States v. Taylor*, 2023 WL 4407593, (D. Maryland 2023) | Defendant participated in three murders and an attempted kidnapping. *Id*. at *1-2. | Reduced a life sentence to 35 years. *Id*. at *7. |
| *United States v. Morris*, 2022 WL 3703201 (S.D.N.Y. 2022) | Defendant committed a murder. *Id*. at *1-2. | Reduced a life sentence to 30 years. Id. at *12. |

Table 1.

While these court decisions in Table 1 considered various factors unique to each case, the two primary considerations that all of these courts emphasized when

3

granting these motions were the defendant's youth when the crime occurred and a strong record of rehabilitation in prison.

Stacy's motion is stronger than all of those cases. Here, like those cases, she was in her early 20s when she committed the crime and she has an impeccable record of rehabilitation, which the Government does not dispute. But, in addition to that, Stacy has extraordinary and compelling circumstances under the current Sentencing Guidelines because of the sexual abuse and related torture that BOP officials inflicted upon her.

### B. The Government does not contest that Stacy has demonstrated extraordinary and compelling circumstances.

The Government does not contest that Stacy's experiences in BOP custody constitute extraordinary and compelling circumstances. Since Stacy's incarceration nearly three decades ago, BOP officials sexually assaulted, groomed, humiliated, and psychologically tortured her. The Government does not address these horrific, lived experiences and makes no effort to square them with the § 3553(a) factors. Resp. at 12 ("no analysis of these factors are [sic] necessary"). While in 1998 the Court may have intended that Stacy is "never ever [] released from prison," it cannot be that the Court intended Stacy to suffer the terrible things she has suffered while incarcerated.

The Government also ignores that Stacy's experiences while incarcerated are

4

inextricably tied to her past. Dr. Berkowitz makes clear how Stacy, a victim of childhood sexual abuse and life trauma, was particularly susceptible to psychological damage at the hands of the BOP. Dkt. 122-9, Report of Dr. Berkowitz, at ¶ 3 ("Stacy's history and psychological status are inextricably connected"), ¶ 52 ("her history … made her extremely vulnerable to developing multiple psychiatric disorders.").

> C. **The Government's analysis of the 18 U.S.C. § 3553(a) factors is incorrect.**
>
>> i. *The nature and circumstances of the offense.*

As shown in Table 1 above, that a defendant is guilty of a heinous and extreme offense is not a bar to compassionate release. The Government reiterates the chilling aspects of the crime, but glosses over the fact that Stacy and Eric were young, drug-fueled, and impulsive. Even during sentencing, Eric admitted that "Stacy doesn't deserve to be here" and that she was there "for actions that [he] did." Sent. Tr. 132:9-16. Aside from retelling the facts of Stacy's sentencing, the Government cannot muster any support for foreclosing Stacy's requested relief based on the nature of her crime.

>> ii. *The history and characteristics of the defendant.*

*LeBaron* is a particularly instructive case here. The Government attempts to distinguish Stacy's history from Patricia LeBaron's, but there are more similarities than differences. Both Stacy and Patricia LeBaron came from traumatic childhoods.

*LeBaron*, 2023 WL 7308116 at *1-4. Both suffered "emotional, physical, verbal, and sexual abuse" at a young age. *Id*. at *3. Both lost parents at a young age. *Id*. at *2. Both were manipulated and brainwashed by the people around them. *Id*. Both ultimately committed horrific crimes that involved murder. *Id.* And both were sentenced before the Supreme Court had recognized that youthful offenders are less deserving of harsh punishment because, in comparison to adults, juveniles have a "'lack of maturity and an underdeveloped sense of responsibility[.]'" *Roper v. Simmons*, 125 S. Ct. 1183, 1195 (2005) (quoting *Johnson v. Texas*, 113 S. Ct. 2658, 2668-69 (1993)). Patricia LeBaron was 23 when committed her crimes—only two years younger than Stacy was at her own sentencing. *LeBaron*, 2023 WL 7308116 at *5.

*LeBaron* teaches that when evaluating the history and characteristics of the defendant for the purposes of compassionate release, childhood trauma is pertinent and impactful. The court in *LeBaron* further notes that recent advances in scientific research—ones yet unknown to this Court at the time of Stacy's sentencing—now demonstrate that "the impact of a traumatic upbringing can serve as extraordinary and compelling reason[] to reduce a mandatory life sentence." *LeBaron*, 2023 WL 7608116 at *8.

Dr. Berkowitz's report further supports the parallels to the *LeBaron* case. As discussed below in more detail, Dr. Berkowitz, like the doctor in the *LeBaron* case,

6

observed numerous adverse childhood experiences and noted that Stacy demonstrates clear signs of complex PTSD stemming from her childhood—the exact same diagnosis that Ms. LeBaron received. Dkt. 122-9, Report of Dr. Berkowitz, at ¶ 52 ("her history … made her extremely vulnerable to developing multiple psychiatric disorders."); *LeBaron*, 2023 WL 7308116, at *7.

Turning to Stacy's characteristics today, the Government notes and concedes Stacy's rehabilitation. However, the Government concludes—without offering any reasoning—that the "rehabilitation does not shift the balance in favor of reduction." Resp. at 15. The Sentencing Guidelines note that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Guidelines at § 1B1.13(d). Thus, there is no dispute that Stacy's rehabilitation weighs in favor of a reduction in her sentence.

Moreover, with respect to Stacy having served hard time, the Government attempts to distinguish *United States v. Castellano*, 2024 WL 4504523 (D. Mont. 2024), by arguing that in that case Chief Judge Morris weighed the defendant's medical conditions against the defendant's crime and disfavored a sentence reduction. But Chief Judge Morris credits that FCI Dublin "inflicted serious harm on inmates." *Id*. at *3. In the end, Chief Judge Morris's decision to deny sentence

7

reduction was based on the defendant's short time at Dublin. *Id.* Castellano spent four months there; Stacy spent more than two decades there serving hard time and this should be considered in her release.

> iii.  *The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The Government offers no support for its proposition that "the facts in this case are unique, extreme, and justify a life sentence." Resp. at 17. As shown in Table 1, there are numerous other cases with similar facts—and some with comparably more shocking facts—in which courts granted compassionate release, including double murders, car jackings that resulted in death, triple murders, and the murder of a federal marshal.

Statistically, Stacy's sentence is actually longer than the average. The Court in *U.S. v. Cruz* noted that the national average length of a federal sentence for murder over the last decade is approximately 22 years, which the 2024 U.S. Sentencing Commission Statistics confirms. *U.S. v Cruz,* 2021 WL 1326851 at * 7 (D. Conn. 2021); 2024 Federal Sentencing Statistics at 11, available at https://www.ussc.gov/topic/data-reports.

When this Court noted in 1998 that it would not be exercising its responsibility if Stacy were given "anything less than a life sentence," the Court was operating based on the facts, law, and science as they were known at the time. Sent. Tr. 152:21-

8

24. Since then, Stacy has endured more abuse and punishment than anyone could have imagined. And the facts, law, and science have all evolved. The disparity between the sentence ordered in 1998 and the sentence Stacy has served has only continued to grow as Stacy spends more time incarcerated. Here, given what Stacy has been subjected to, allowing her to remain in the abusive custody of the BOP is what undermines the notions of just punishment and respect for the law—not releasing her.

> iv. *The need to afford adequate deterrence to criminal conduct and protect the public from further crimes.*

The Government does not contest that Stacy is not a threat to society.

> v. *Impact of the agreement*

The Government implies that Stacy is trying to break her end of an agreement she entered into before sentencing. In fact, the Government is not even relying on a plea deal but a "memorandum of understanding," the legal weight of which is unclear. Resp. at 18. But, Stacy entered into this understanding—placing the rest of her life in the hands of the justice system—under the assumption that the Bureau of Prisons would fulfill its statutory duty to keep her safe and meet her basic needs. 18 U.S.C. § 4042(a)(2)-(3). Instead, it subjected her to sexual assault, abuse, and mock executions. She provided information under the agreement and fulfilled her part of the bargain only to be subjected to traumatizing and criminal actions that the

9

Government does not contest had devastating effects on Stacy's health.

Moreover, Stacy's agreement does not foreclose the Court's ability to grant compassionate release. Courts are authorized to reduce a statutory mandatory minimum sentence under § 3582(c)(1)(A). *See, e.g., United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (per curiam) (holding that "a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release").

And, as shown in Table 1, at least 10 federal court decisions have granted compassionate release for murders in cases *without* a plea agreement; they were all convictions at trial. In contrast, Stacy pled guilty and accepted responsibility for her crime. Other defendants who were granted compassionate release for murders refused to accept responsibility during their trials and *forced* the government to convict them before a jury; Stacy did not. It is illogical that accepting responsibility and cooperating would be held against her.

      vi.  *Amendment to USSG § 5H1.1 warrants a reduction*

Recent amendments to USSG § 5H1.1, which were not available to the Court at the time of Stacy's sentencing, urge courts to consider adverse childhood experiences, environment, and substance use when sentencing. The Government disputes that Stacy suffered adverse childhood experiences sufficient to warrant a reduction to time served but offers no justification for its position.

As an initial matter, the Government's position here directly contradicts both what the Court and the Government noted previously: that Stacy did have an abusive upbringing. The Government does not dispute that Stacy "entered evidence that she suffered molestation, rape, and the loss of a child prior to committing this offense." Resp. at 19. Indeed, the Government admits that "this Court knew about and considered the defendant's traumatic childhood." *Id*. at 20. It is therefore perplexing that the Government now claims that "Weischedel has not supported her Adverse Childhood Experiences." *Id*.

Secondly, Stacy has provided significant evidence, including an evaluation from an expert psychiatrist, supporting her attestations. Similar to *LeBaron*—where Dr. Akinsulure-Smith presented a recent psychological evaluation yielding evidence of the toxic environment in which the defendant was raised—Dr. Berkowitz's report describes Stacy's childhood and its effects on her subsequent behavior through her crime and adulthood in detail. *Compare LeBaron*, 2023 WL 7308116 at *7 *with* Dkt. 122-9, Report of Dr. Berkowitz, at ¶ 11. Dr. Berkowitz outlines "Stacy's incredible history, unrelenting traumatic exposures, and reactions" thereto. *Id*. Dr. Berkowitz emphasizes that "Stacy entered her relationship with Eric with a *significant history of traumatic exposures*." *Id*. at ¶ 25 (emphasis added). Additionally, Dr. Berkowitz concludes that Stacy meets the "DSM-5 requirement for a criteria A exposure and her history (e.g., sexual abuse by her grandfather, group rape at 14 years old, still

11

birth child) made her extremely vulnerable to developing … PTSD." *Id*. at ¶ 52.

In contrast, the Government provides no expert support for its opinion. The Government criticizes Dr. Berkowitz for not conducting Adverse Childhood Experience testing but does not identify why that test is necessary or even helpful. And though the Government cites to *LeBaron* in reference to Adverse Childhood Experience testing, *LeBaron* makes no mention of such a test. The weight of Dr. Berkowitz's evaluation and the policy of USSG § 5H1.1 that "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems" lean heavily in favor of a reduction in sentence.

### III.  CONCLUSION

Ultimately, the Government's sole focus is on the gravity of Stacy's crime, but Stacy's crime does not foreclose her opportunity for compassionate release. The Government cannot and does not challenge that Stacy has been remarkably rehabilitated nor that what she endured in prison was extraordinary and compelling. Reviewing each of the § 3553(a) factors through the appropriate lens—giving Stacy's past crime its due weight—reveals that the balance favors compassionate release. Taken together with her rehabilitation, extraordinary and compelling circumstances, and comprehensive release plan, Stacy is a strong candidate for compassionate release. Continuing to hold her in prison, trapped by the very same

people who sexually abused and psychologically tortured her, would not serve the purpose of this justice system.

Stacy Weischedel respectfully asks this Court to grant her motion for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A).

RESPECTFULLY SUBMITTED this 18 day of July 2025.

By: /s/ Colin M. Stephens

Colin M. Stephens
Stephens Brooke, P.C.
315 W. Pine
Missoula, MT 59801
Tel: 406-531-7724
Email: colin@stephensbrooke.com

Roy Falik
King & Spalding LLP
1401 Lawrence St
Suite 1900
Denver, CO 80202
Tel: 858-344-7745
Email: rfalik@kslaw.com

        David Harper Weiss
        Mayer Brown LLP
        700 Louisiana St
        Suite 3400
        Houston, TX 77002-2798
        Tel: 713-238-2952
        Email: dweiss@mayerbrown.com

        *Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule CR 47.2. The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 3,250 words. (Total number of words: 2,839 excluding tables and certificates).

DATED this 18 day of July 2025.

        By: /s/ Colin Stephens

        Colin Stephens
        Stephens Brooke, P.C.

        *Attorney for Defendant*